[No. A084637. First Dist., Div. Two. Aug. 12, 1999.]

In re JANEE J., a Person Coming Under the Juvenile Court Law.
CONTRA COSTA COUNTY SOCIAL SERVICES DEPARTMENT,
Plaintiff and Respondent, v.
DARLENE G., Defendant and Appellant.

COUNSEL

Montgomery G. Frankel, under appointment by the Court of Appeal, for Defendant and Appellant.

Victor J. Westman, County Counsel, and Valerie J. Ranche, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**LAMBDEN, J.**—Darlene G. (mother) appeals from an order after a hearing under Welfare and Institutions Code section 366.26 (hereafter .26 hearing) terminating her parental rights in daughter Janee J. (Janee) and selecting adoption as the permanent plan. (Cal. Rules of Court, rule 39.1A.)[1] We reject her contentions and affirm the judgment.

### BACKGROUND

Janee was born on May 10, 1997, with cocaine and marijuana in her system. Mother tested positive for cocaine and admitted cocaine use during the pregnancy. A petition filed by the Contra Costa County Social Services Department (department) on May 13 alleged dependency for lack of care (§ 300, subd. (b)) and for sibling abuse (*id.*, subd. (j)) based on the drug presence, mother's admission, former dependency status for two half

---

[1] All section references are to the Welfare and Institutions Code; all rule references are to the California Rules of Court.

brothers (now ages three and eight), and a history of drug use by both mother and the father. Janee was detained; mother was present at the hearing and was served with the order.

Petitions were also filed as to each sibling; those are not part of our record but are referred to as having had nearly identical allegations. At a jurisdictional hearing on June 4, 1997, with mother attending and represented by Public Defender Marita Mayer, a negotiated settlement was reached on all three. For Janee's petition, allegations of mother's and Janee's positive tests for cocaine, plus the father's drug use history, were sustained (§ 300, subds. (b) & (j)), and all others were dismissed. Mother agreed, despite dismissal of an allegation of her impaired ability to provide due to a drug problem, to comply with an anticipated drug program and testing component of a plan to be ordered at disposition. For the sibling petitions, there was a similar dismissal of all but the two allegations of cocaine testing, which were sustained. Only Janee was detained; the sons remained in mother's residence, which was the home of their great-great-grandmother, Ella W., who helped care for the sons. The father did not live with them. Counsel for mother said at the close of the hearing that she would contact the social worker right away about mother's getting started on a plan, given that mother was waiving time on the dispositional hearing.

The joint dispositional hearing was held on August 13, but mother had made no progress. She had missed visits, had not begun drug testing, and was not present for the hearing, although her counsel was. The court followed a recommendation of continued foster care for Janee with a reunification plan, and in-home care for the siblings, with a family maintenance plan. The two plans were virtually the same, each calling for a drug treatment program, random drug testing, Narcotics Anonymous, and cooperation with the department. Owing to mutual past violence with the father, mother was also required to refrain from such violence. For Janee, of course, she had to maintain regular visits and establish a positive relationship. Her drug use was ongoing. Relative placement was being considered with maternal grandmother, Adrienne G., who expressed an intent to move into the Ella W. household, but an investigation by the department left unresolved concerns whether she would actually live and care for Janee there, and about her live-together male partner of six years, who had prior arrests. The dispositional report noted that mother had shown in the past that, "with the support of helpful family members, including her mother," she could provide adequate care for the older children "despite her habitual drug use." The department was concerned, however, that she could not do so for Janee, who was fragile due to tender age and drug withdrawal symptoms. Janee was six weeks old and weighed ten pounds. She had tremors, vomiting, excessive

crying, waking every few hours, and frequent colds. An experienced foster mother was using swaddling and massage to help, but Janee was being referred to a special program "for assessment and treatment of possible developmental problems." The reunification plan was put into effect, and the court (and counsel for the minor) stressed a need to warn the parents of their limited time to reunify—six months for Janee and twelve for the others—but noted that neither parent was present in court.

A six-month review was noticed for February 4, 1998. Mother did not appear, but her counsel—now James Jordan from the alternative defender's office—did. Mother also failed to appear on February 18, but her counsel was granted a continuance to review discovery. The review report noted that, despite repeated referrals by social workers and urgings to get started quickly in drug treatment, mother had never begun a program. Her drug use was ongoing, and she had admitted chronic use of cocaine since 1988. At three unannounced visits to the home, she had not seemed to be under the influence and was caring for her sons appropriately, but she refused to have drug tests. She had not made visits at the social services office and had requested none; a social worker had transported Janee to her home once at Christmastime. Janee remained in emergency foster care, still displaying drug withdrawal symptoms like tremors, frequent waking, crying, colds, and "arching-throwing herself back as you hold her." Mother claimed she was no longer "in a relationship with domestic violence." The report recommended continuing the reunification plan, and a supplemental letter of February 1998 explained that more time was being requested because, due to multiple changes in the assigned social worker, services offered for the first two months following disposition had not, in the department's view, been adequate. The current social worker, however, had been assigned since mid-October of 1997, and services from then on had been adequate. The department asked for a further review after two more months of services.

The review hearing commenced on March 4, 1998, with mother represented by counsel (Michael Kelly) but, again, not present herself. The court honored the request and recommendation. It found the first months of services inadequate, with services after then adequate, found that the parents had not complied with their plans, and set another hearing for April 29. Mother failed to appear on that date, too, and the matter was continued twice, once to receive a late report.

The hearing was held on May 26, over seven months since the start of adequate services and more than nine months since the disposition. Mother again did not appear. The new report plus testimony by case worker Nance Dehring showed no further compliance by mother. Mother had not visited

Janee since the Christmastime visit, and Dehring had last had contact with mother on February 11, 1998 (apparently an unannounced home visit), when they discussed her lack of plan compliance. Dehring had since mailed a letter to the home, personally visited three times, and left cards and test forms asking for a return call. She had made several referrals to drug programs, without success, and mother still refused to drug test. While there was no particular evidence of drug use, the refusal to drug test meant the department was not "able to collect evidence that she's not using drugs . . . ." The department contemplated filing a supplemental petition for the siblings. While they had appeared adequately cared for with the assistance of other adults in the house, mother was making no further contact. Janee, meanwhile, was doing well in foster care "and only occasionally . . . showing the startle response and shrill cry due to her mother's cocaine use during pregnancy."

The court adopted the proposed findings and, as recommended for Janee, terminated reunification services and set a .26 hearing. Mother's counsel was present in court. Notice to mother of the .26 hearing and of her need to challenge the ruling setting the hearing by writ petition (rule 39.1B) was provided.

The report for the .26 hearing showed that Janee, at 11 months, was healthy but still had problems from cocaine exposure. She displayed "some rigidity" but now "only occasionally" was startled and cried shrilly. She still did not sleep through the night, was "not comfortable with strangers" and took "a while to warm up to a person." Despite "some behaviors that are of concern," she was adoptable. The recommendation was for a plan of adoption, and termination of parental rights.

The .26 hearing was held on September 14, 1998. Mother appeared with counsel. Witnesses testified without dispute that Janee was adoptable and had had extended visits with an interested and suitable adoptive family with whom she was bonding rapidly. The point of debate was whether the department abused its discretion in opting for that family over one of mother's sisters, who had very lately expressed for the first time an interest in adopting. The court saw no abuse of discretion in that regard (and no such issue is raised here). The court terminated parental rights and selected adoption as the plan. The father, who was by then in prison and had waived his appearance, is not a party to this appeal.

### DISCUSSION

Mother claims multiple errors of notice and findings at various stages in the proceedings, backing each with an argument that trial counsel

rendered ineffective assistance by failing to object. We will examine each claim, in the order presented, but first outline why most of the claims are beyond our review on this appeal from the .26 hearing order.

## I. *Review Limitations*

Mother appeals from the .26 hearing order terminating her parental rights. She did not appeal the disposition order or any order made between then and the .26 hearing. Nor did she petition for writ review, the exclusively prescribed vehicle for appellate review of an order setting a .26 hearing (§ 366.26, subd. (*l*); rule 39.1B; *In re Charmice G.* (1998) 66 Cal.App.4th 659, 666-669 [78 Cal.Rptr.2d 212]).

Section 395 provides: "A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . ." "This statute makes the dispositional order in a dependency proceeding the appealable 'judgment.' [Citation.] Therefore, all subsequent orders are directly appealable without limitation, except for post-1994 orders setting a .26 hearing when the circumstances specified in section 366.26, subdivision (*l*) exist. [Citations.] A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order. [Citations.]" (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 [65 Cal.Rptr.2d 913] (*Meranda P.*).) An order terminating parental rights after a .26 hearing is, of course, appealable. (*In re Matthew C.* (1993) 6 Cal.4th 386, 393 [24 Cal.Rptr.2d 765, 862 P.2d 765] (*Matthew C.*); § 366.26, subd. (i).)

In circumstances similar to ours, the court in *Meranda P.* applied those familiar principles to bar a mother's claims, on appeal from an order terminating parental rights, that she had been denied her right to counsel from the initial detention hearing until an 18-month review and that her counsel from that hearing forward had rendered ineffective assistance. The mother had not appealed from any prior order or sought writ relief from the order setting the .26 hearing. (*Meranda P., supra*, 56 Cal.App.4th at pp. 1150-1151.) *Meranda P.* held: "The principle—which for convenience we will identify as the 'waiver rule'—that an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order is sound. We decline to carve out an exception to it here even though the issues raised involve the important constitutional and statutory rights to counsel and to the effective assistance of counsel." (*Id.* at p. 1151.) And weighing the interests, risks and benefits at stake in that context revealed no violation of due process in enforcing the

waiver rule. Permitting a parent to raise issues going to the validity of a final earlier appealable order would directly undermine dominant concerns of finality and reasonable expedition (*id.* at pp. 1151-1152); the risk of erroneous deprivation of the parent's rights was diminished by the fact that error of this sort requires prejudice to be reversible (*id.* at pp. 1152-1153) and by the significant safeguards built into the system for any parent who may be unable to present an adequate defense (*id.* at pp. 1154-1155). Enforcing the waiver rule also furthered vital policy considerations of promoting, at that late stage, the predominant interest of the child and state, preventing a sabotage of the process and preserving the legislative scheme of restricting appeals of final-stage termination orders. (*Id.* at pp. 1155-1157.) The parent, of course, also has the right to express concerns at any stage and take appeals or seek writ review along the way. (*Id.* at pp. 1157-1158.) Extending that rationale, *Meranda P.* held that the statutorily final and nonmodifiable orders in that case could not be collaterally attacked by a petition for writ of habeas corpus. (*Id.* at pp. 1160-1166.) The Supreme Court unanimously denied the mother's petition for review. (*Id.* at p. 1166.)

More recently, a decision from the same district stressed the importance to the *Meranda P.* analysis of the parent's ability to mount an attack on a setting order by way of a rule 39.1B writ petition. On a mother's appeal from a section 366.26 order, the court considered claims regarding the setting hearing, reasoning that it was the mother's, not her counsel's, burden to pursue appellate rights and that the mother had not been given required notice of her rule 39.1B rights. (*In re Cathina W.* (1998) 68 Cal.App.4th 716, 719-724 [80 Cal.Rptr.2d 480] (*Cathina W.*).) Such notice was given in our case.

Mother relies on the Supreme Court's conclusion in *Matthew C.* that former section 366.26, subdivision (k), did not appear to abrogate appellate review of the issues subsumed within an order terminating reunification services and setting a selection and implementation hearing and that, consequently, "findings subsumed within such orders remain reviewable on appeal from the final order made at the section 366.26 hearing." (*Matthew C., supra,* 6 Cal.4th at p. 401, fn. omitted.) However, as noted in *Meranda P.* (56 Cal.App.4th at p. 1159), that part of *Matthew C.* was legislatively abrogated in 1994 with the enactment of subdivision (*l*) of section 366.26, which strictly limits review to the writ proceeding and which was not in effect when the Supreme Court construed the scheme (see *Matthew C., supra,* 6 Cal.4th at p. 400, fn. 13 [suggesting the Legislature might so limit review]).

Mother argues that the waiver rule as applied by *Meranda P.* to a .26 hearing appeal *never* allows review of trial counsel's prior performance, no

matter how deficient, and guts the dependency scheme's guarantee of "competent" appointed counsel (§ 317.5, subd. (a)), stripping away due process protection for a parent. We do not read *Meranda P.* nearly so broadly. The case reasons that late consideration of ineffective assistance claims defeats a carefully balanced legislative scheme by allowing a back-door review of matters which must be brought for appellate review by rule 39.1B writ at the setting hearing stage or by earlier appeals, that is, before the point is reached where reunification efforts have ceased and the child's need for permanence and stability become paramount to the parent's interest in the child's care, custody and companionship (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [27 Cal.Rptr.2d 595, 867 P.2d 706]). Thus, and this is the crux of *Meranda P.*: the waiver rule will be enforced unless due process forbids it. The case conceded "the critical role in ensuring an accurate and just decision played by a capable appointed counsel" (*Meranda P., supra,* 56 Cal.App.4th at p. 1155) but noted "significant safeguards built into this state's dependency statutes which tend to work against the wrongful termination of a parent's right to a child even though a parent may be unrepresented or poorly represented" (*id.* at p. 1154). Those safeguards include a focus on return of the child during the reunification period, independent judicial review every six months, and notice to a parent of all proceedings and the right to counsel at all stages. (*Id.* at pp. 1154-1155.) Thus in the usual case, application of the waiver rule will not offend due process. We agree.

Furthermore, *Meranda P.* did not create an *absolute* bar to review of ineffective assistance, right to counsel, or other claims tardily presented on a .26 hearing appeal. Its exhaustive attention to the full dependency scheme and to the particular facts in the case before it attests to this. So does its initial conclusion about the waiver rule: "We decline to carve out an exception to it *here* even though the issues raised involve the important constitutional and statutory rights to counsel and to the effective assistance of counsel." (*Meranda P., supra,* 56 Cal.App.4th at p. 1151, italics added.) Proof of case-specific flexibility is *Cathina W., supra,* 68 Cal.App.4th 716, 722-724, where the same court on another section 366.26 appeal entertained a mother's claims of error at the setting hearing, reasoning that the mother's failure to receive notice of her rule 39.1B review rights, plus other notice flaws, constituted good cause excusing her noncompliance with the writ procedure.

■ We need not try to catalogue all circumstances that might allow relaxation of the waiver rule, but *Meranda P.* and *Cathina W.* imply guidelines. First, there must be some defect that fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole. Lack

of notice of rule 39.1B rights was one such example in *Cathina W.* Second, to fall outside the waiver rule, defects must go beyond mere errors that might have been held reversible had they been properly and timely reviewed. To allow an exception for mere "reversible error" of that sort would abrogate the review scheme (§§ 366.26, subd. (*l*), 395) and turn the question of waiver into a review on the merits. ▮▮▮ *Meranda P.* recognized that error unfavorable to a parent's interests during the course of dependency may well prove irremediable (*Meranda P., supra,* 56 Cal.App.4th at p. 1155), yet applied the waiver rule anyway. Finally, it follows that resort to claims of ineffective assistance as an avenue down which to parade ordinary claims of reversible error is also not enough and that it is never enough, alone, to argue that counsel rendered ineffective assistance by not raising potentially reversible error on rule 39.1B writ review of a setting order.

Mother argues as to ineffective assistance that the waiver rule places trial counsel in an "absurd" position of seeking appeal or writ review of his or her own incompetence for failing to prevent or correct errors in the proceedings, but she is mistaken. First, an ineffective assistance claim is unnecessary where, upon timely review by appeal or writ petition, the error or omission can be raised directly. Second, mother's vision of trial counsel having to argue his or her own ineffectiveness is exaggerated. Trial counsel remains the parent's counsel for purposes of seeking rule 39.1B writ review of the setting order (*Rayna R.* v. *Superior Court* (1993) 20 Cal.App.4th 1398, 1404 [25 Cal.Rptr.2d 259]), but review at that stage, limited as it is to events since the last appealable postdisposition order, should rarely require resort to ineffective assistance claims as opposed to direct claims of error. And at any earlier *appeal*, the indigent parent would be entitled to appointed counsel (*In re Chantal S.* (1996) 13 Cal.4th 196, 210 [51 Cal.Rptr.2d 866, 913 P.2d 1075]; *In re Joshua B.* (1996) 48 Cal.App.4th 1676, 1680 [56 Cal.Rptr.2d 556]; § 317) and would have independent appellate counsel.

As will be seen later in this opinion, mother's claims here are not excused from the waiver rule by any apparent defect that fundamentally undermined the statutory scheme so that she was kept from availing herself of its protections as a whole.

## II. *Notice of Reunification Period*

▮▮▮ Mother claims she did not receive timely formal notice, as prescribed by code, that her parental rights could be terminated after six months if she failed to participate in the ordered programs, cooperate with the department, or avail herself of case plan services. (§ 361.5, subd. (a)(2).) She cites the warning's role in assuring a parent due process notice and an opportunity to

be heard (see generally, *In re B. G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244]) and its heightened role in these proceedings where, because Janee was under age three when initially removed, the normal reunification period of twelve months was reduced to six. (§ 361.5, subd. (a)(2).) The department concedes that the record does not contain a filed notice of the warning but suggests that one was probably sent but just not filed and, in any event, that any error in this regard is waived or harmless.

We agree the claim is waived. Notice of the six-month reunification period was an issue for proceedings ending with the May 26, 1998, hearing at which those services were terminated and the matter set for a .26 hearing, based in part on the six months (actually seven-plus in this case) having elapsed. Mother raises ineffective assistance on this .26 hearing appeal in the hopes of avoiding the waiver rule, but she would have had no need to raise it in seeking writ review directly. Also, mother forgets that it is the parent, not the attorney, who has the burden to pursue appeal rights, particularly in the rule 39.1B setting. (*Cathina W.*, *supra*, 68 Cal.App.4th at pp. 723-724; *Janice J.* v. *Superior Court* (1997) 55 Cal.App.4th 690, 692 [64 Cal.Rptr.2d 227] [parent must personally sign or authorize the notice of intent]; *Suzanne J.* v. *Superior Court* (1996) 46 Cal.App.4th 785, 788 [54 Cal.Rptr.2d 25] [same].) *Meranda P.* held the mother responsible for not acting to protect her own interests: "Even if she could not articulate a legal issue such as right to counsel or ineffective assistance, she obviously knew that she did not have custody of [her child]. If she felt the loss of custody was improper for whatever reason, she had ample opportunity to express her concerns . . . ." (*Meranda P.*, *supra*, 56 Cal.App.4th at p. 1158.) Here, too, if mother truly had no idea that she had to make good on her plan within six months, she never indicated this to the department or to anyone else, as far as our record reveals.

Her claim of ineffective assistance, moreover, would similarly suffer on the record we have. Her counsel's failure to object about reunification-time notice could well have been because (1) she actually had such notice, (2) counsel had fully explained this to her, and/or (3) she knew from having previously had two sons in the dependency system. The record does not rule out any of these rational explanations. (Cf. *People* v. *Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [62 Cal.Rptr.2d 437, 933 P.2d 1134].)

### III. *Detriment Finding*

Mother complains that the court, from disposition through the review hearings, failed to make adequate findings that return of Janee to her would

create a substantial risk of detriment. (§ 366.21, subd. (e); see also § 366, subd. (a).) She faults the court for not making *express* findings or stating a factual basis, and she faults counsel for not objecting to or seeking review of this. The department argues that the court did make findings, that they were supported by the full evidence and by the prima facie proof of mother's failure to "participate regularly in court-ordered treatment programs" (§ 366.21, subd. (e)), that enough was stated, that any error was harmless, that counsel did not render ineffective assistance, and that all claims fail at the outset under the waiver rule.

Again, the waiver argument is persuasive and not overcome by faulting counsel. Mother voiced no opposition to the no-return findings at any time and, it appears, may have acceded to a lack of Janee's return at the dispositional hearing as part of a three-petition negotiated settlement. She points to nothing in this respect that fundamentally prevented her from enjoying the multiple protections provided by the dependency scheme. The issue is thus waived as to any point before the .26 hearing.

Mother intimates that a further detriment-from-return finding was required at the .26 hearing. This is a cognizable issue for this appeal, but we are unaware of any authority for her position and so reject it on the merits. The statutory presumption that a child will be returned, and hence the need to overcome that presumption with a detriment finding, runs from the disposition through the reunification period. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability. . . . The court need not continue to consider the issue of reunification at the [.26 hearing]. The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue. . . ." (*Id.* at p. 309.) No finding of detriment from return was required at the .26 hearing.

## IV. *Reasonable Services*

Although the court expressly found at the March 4, 1998, review hearing that two months of reunification services had been inadequate and ordered further services, mother claims prejudice in the court's failure to make an express finding at the May 26 hearing that a full six months of reasonable services had been offered. The department defends on the merits but asserts waiver as well.

This issue could have been raised on rule 39.1B writ review of the setting order of May 26. No review was sought, and that order is final and cannot be

attacked tardily on this appeal from the .26 hearing order. (*Meranda P.,* *supra,* 56 Cal.App.4th at pp. 1150-1151.) No defect of fundamental proportions is shown to overcome the waiver rule, and for reasons we have already explained, the ineffective assistance claim does not change the situation. No finding of reasonable services was required, of course, at the .26 hearing, and mother does not appear to argue otherwise.

## V. *Placement Determinations*

■ Section 366, subdivision (a), states in part: "The status of every dependent child in foster care shall be reviewed periodically . . . until the hearing described in Section 366.26 is completed. The court shall consider the safety of the child, shall determine the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, the continuing need to suspend sibling interaction, if applicable, pursuant to subdivision (c) of Section 16002 [siblings also in foster care], and the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care, and shall project a likely date by which the child may be returned to the home or placed for adoption or legal guardianship."

Mother claims the court failed to comply with this language anytime throughout the proceedings, including the .26 hearing. The department claims there was compliance, that the waiver rule precludes any attack on past orders, and that the section had no application at the .26 hearing. We initially agree with the department that the waiver rule bars any attack on the prior orders, including mother's attempt to frame this as ineffective assistance.

As for the .26 hearing, we agree with the department that the section did not apply but note that both parties appear unaware that the Supreme Court has expressly resolved this issue. "Although section 366, subdivision (a) has direct application to a permanency hearing held pursuant to section 366.25, it has no such application to a section 366.26 hearing. Section 366, subdivision (a) refers to a periodic six-month review hearing the juvenile court is required to hold prior to the selection and implementation of a permanent plan. A section 366.26 hearing, however, is not a periodic status review hearing. It is a hearing specifically designed to select and implement a permanent plan for the child. . . . The requirement of section 366, subdivision (a) that the court must project a likely date by which the child may be returned home or placed for adoption or legal guardianship is inapplicable to a section 366.26 hearing since the child's placement is selected and implemented at the section 366.26 hearing. [¶] Section 366 may not reasonably be

read as broadening the scope of a section 366.26 hearing to authorize consideration of return to parental custody as an option at that point. . . ." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 304.) The Supreme Court in that 1993 case construed language (*id.* at p. 301) that was in pertinent part identical with the current version of the statute.

It follows that no error of noncompliance occurred at the .26 hearing here.

## VI. *Basis for Terminating Rights*

Mother lastly complains of "fundamental error" at the .26 hearing in the court's asserted failure to "specify the grounds for its decision" to terminate her parental rights, a claimed requirement of subdivision (c)(1) of section 366.26. She claims this is error of federal due process dimension because the federal high court has held that there must be clear and convincing evidence of parental unfitness before a court may terminate rights (*Santosky* v. *Kramer* (1982) 455 U.S. 745 [102 S.Ct. 1388, 71 L.Ed.2d 599]) and no such finding was made here at the .26 hearing. The department does not directly address this contention under an appropriate heading, but we find it to be without merit.

The fault lies in mother's assumption that an unfitness finding was a matter for the .26 hearing. It was not, for in our statutory scheme the equivalent of an unfitness finding is made by the time of the setting hearing, when the court terminates services, rules not to return the child and sets a .26 hearing (§ 366.21, subd. (g)). "[S]ection 366.26 cannot properly be understood except in the context of the entire dependency process of which it is part. Unlike the termination hearings evaluated in *Santosky* v. *Kramer*, *supra*, 455 U.S. 745, and *In re Angelia P.* [(1981)] 28 Cal.3d 908 [171 Cal.Rptr. 637, 623 P.2d 198], the purpose of the section 366.26 hearing is not to accumulate further evidence of parental unfitness and danger to the child, but to begin the task of finding the child a permanent alternative family placement. By the time dependency proceedings have reached the stage of a section 366.26 hearing, there have been multiple specific findings of parental unfitness. Except for a temporary period, the grounds for initial removal of the child from parental custody have been established under a clear and convincing standard (see § 361, subd. (b)); in addition, there have been a series of hearings involving ongoing reunification efforts and, at each hearing, there was a statutory presumption that the child should be returned to the custody of the parent. (§§ 366.21, subds. (e), (f), 366.22, subd. (a).) Only if, over this entire period of time, the state continually has established that a return of custody to the parent would be detrimental to the child is the section 366.26 stage even reached." (*Cynthia D.* v. *Superior Court* (1993) 5

Cal.4th 242, 253 [19 Cal.Rptr.2d 698, 851 P.2d 1307], fn. omitted (*Cynthia D.*).) The elevated standard of unfitness therefore does not apply at the .26 hearing (5 Cal.4th 242, 253), where parental rights are terminated.

Rather, "in order to terminate parental rights, the court need only make two findings: (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated. According to the task force, 'the critical decision regarding parental rights will be made at the dispositional or review hearing, that is, that the minor cannot be returned home and that reunification efforts should not be pursued. In such cases, the decision to terminate parental rights will be relatively automatic if the minor is going to be adopted.' [Citation.] The task force's intent was 'to eliminate duplication between the regular review hearings and the termination hearing. Therefore, the decisions made at the review hearing regarding reunification are not subject to relitigation at the termination hearing. This hearing determines only the type of permanent home.' [Citation.]" (*Cynthia D.*, *supra*, 5 Cal.4th at pp. 249-250.)

Thus mother's claim—which is really her detriment-from-return argument in new clothing—cannot be reached on this appeal from the .26 hearing. As for the .26 hearing itself, the only required findings were that Janee was adoptable and that there had been a prior decision to terminate reunification services. Both of those issues are undisputed on this appeal—except for mother's improper attempt to relitigate *the merits*, rather than the existence, of the services-termination ruling. No error is shown.

DISPOSITION

The judgment is affirmed.

Kline, P. J., and Ruvolo, J., concurred.

A petition for a rehearing was denied August 31, 1999, and appellant's petition for review by the Supreme Court was denied November 17, 1999.